844 F.2d 133
 Fed. Sec. L. Rep. P 93,706
 INGERSOLL-RAND FINANCIAL CORPORATION, Appellant,
v.
Russell J. CALLISON, Victor K. Hardin, Gregory M. Hunt and
Sharon Smith Hunt, John G. Jackson, Dr. Richard S. Koch,
David A. Milne, M. Tabuchi Co., Bachmann, Arnold, Graybill &
Craig, a partnership organized for the practice of law,
Daniel G. Bachmann; Robert R. Arnold; Jacob S. Graybill;
and J.B. Craig, Granco-Martinex 1983 A, a Colorado limited
partnership; Martinex Corporation, a Colorado corporation;
and Granco Resources Management, Inc., a Colorado corporation.
 
 Nos. 87-5660, 88-5023.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 3, 1988.
Decided April 15, 1988.
 Joseph L. Cook (argued), Mitchell B. Seidman, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for appellant.
 Morris C. Gore (argued), Dallas, Tex., for appellee Jackson.
 Daniel M. Hurley, Hurley & Vasios, P.C., Short Hills, N.J., for appellees Bachman, Arnold, Graybill & Craig, Daniel G. Bachman, Robert R. Arnold, Jacob S. Graybill and J.B. Craig.
 Before SLOVITER, STAPLETON and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this appeal we review the district court's decision to dismiss Ingersoll-Rand Financial Corporation's diversity action to collect on a promissory note. The action was dismissed in favor of a state court action, in which the federal defendant is the plaintiff, demanding cancellation of the note for violation of state and federal securities laws. We find that forcing the state plaintiff to litigate his securities claims in two forums, albeit as a defense in federal court to liability on the note, would interfere with the congressional mandate that the plaintiff's choice of forum not be disturbed in actions under the Securities Act of 1933. Therefore, the district court was within its discretion, under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in deferring to the state court's decision on the federal law issues.
 
 
 2
 The decision to invoke Colorado River ordinarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case. Moses H. Cone Hospital v. Mercury Const. Corp., 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983). Nevertheless, under the unusual circumstances of this case, Ingersoll-Rand may at some point still be entitled to a federal forum for its diversity action to collect on the note. Therefore we will reverse the order of dismissal and remand for entry of an order to stay the action pending the outcome in state court.
 
 I.
 
 3
 In considering a motion for dismissal, we accept the facts as alleged in the complaint. During December of 1983 appellee Jackson and each of the other defendants in this action invested in Granco-Martinex Limited ("Granco"), a limited partnership. To secure the purchase price for the partnership units, each investor executed a promissory note payable to Granco. Later in December of 1983 Granco endorsed and delivered each of the investor's notes to Ingersoll-Rand as security for a loan to the partnership.
 
 
 4
 Each investor also entered into an Acknowledgement and Agreement with Ingersoll-Rand acknowledging an outstanding balance on the note to Granco and the endorsement of the note to Ingersoll-Rand, and agreeing not to assert against Ingersoll-Rand any claims, defenses or setoffs that the borrower might have against Granco. These agreements contained a forum selection clause whereby the investors consented to the jurisdiction of the New Jersey courts, including the United States District Court for the District of New Jersey, for the purpose of any action in connection with the notes.
 
 
 5
 Granco defaulted on the payments due to Ingersoll-Rand. Ingersoll-Rang therefore looked to the investors and the surety bond securing their notes for payment of the money due. Because the bonding company was insolvent, Ingersoll-Rand demanded payment directly from the investors. The investors defaulted on the obligations under their notes, and Ingersoll-Rand instituted this action to recover the monies due. Federal subject matter jurisdiction was predicated only on diversity of citizenship. Personal jurisdiction over Jackson was obtained by means of the contractual forum selection clause.
 
 
 6
 Jackson then moved for dismissal of the case against him or, in the alternative, for a stay of the action pending the completion of a Texas state court suit, John G. Jackson v. Martinex Corporation, Ingersoll-Rand Financial Corporation, et al., Docket No. 86-13560, District Court of Dallas County, Texas, 191st Judicial District. In the Texas suit Jackson is suing Granco, its promoters and general partners, and Ingersoll-Rand. Jackson is seeking a rescission of the sale of his partnership unit on the ground that he was fraudulently induced into investing in the Granco partnership and on the ground that the sale of these partnership units violated Texas Blue Sky Laws and the Securities Act of 1933. The relief sought in the Texas litigation includes a request for rescission of the note which Ingersoll-Rand is attempting to enforce in the litigation before us.
 
 
 7
 On May 26, 1987 the district court denied Jackson's motion to dismiss and granted Ingersoll-Rand's motion for summary judgment for $40,000, the principal due under the note plus interest. On August 19, 1987, in response to Jackson's motion for reconsideration, the district court denied Ingersoll-Rand's motion for summary judgment and granted Jackson's motion to dismiss. The court was persuaded that a determination in state court that Ingersoll-Rand had violated state or federal securities laws in connection with the transaction might provide Jackson with a defense to Ingersoll-Rand's status as a holder in due course in the federal court action. The district court reasoned that acknowledgment of this possibility allowed no other conclusion than that Ingersoll-Rand had brought its federal action in order to circumvent the restriction of 15 U.S.C. Sec. 77v which prohibits removal of cases arising under the Securities Act of 1933. The district court found that the intent of Congress to give plaintiffs broad discretion to choose a state forum provided the compelling justification for refusal to exercise federal jurisdiction in accordance with the policies expressed in Colorado River and Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
 
 
 8
 The district court decided to dismiss the action rather than to stay it, reasoning that collateral estoppel would undoubtedly dispose of the federal action after the state court resolution. Ingersoll-Rand appeals from the opinion and order of August 19, 1987.[1]
 
 
 9
 Ingersoll-Rand argues on appeal that 15 U.S.C. Sec. 77v does not prevent it from pursuing its collection efforts on the note in New Jersey because it is not subject to the remedy of rescission pursuant to 15 U.S.C. Sec. 77l. Ingersoll-Rand asserts that rescission is available only against the issuer of the security and not against the lender who finances the transaction. Appellant argues that Sec. 77v cannot be used to force it to pursue its collection efforts as a counterclaim in the Texas action because the bargained-for forum selection clause entitles it to pursue its collection efforts in the United States District Court for the District of New Jersey. Finally, the appellant argues that, if the district court felt that the Texas action should be resolved prior to proceeding with the collection action, it should have stayed the collection action rather than dismissing it so that the appellant would not lose entirely the benefit of its bargained-for right to pursue its collection action in New Jersey.[2]
 
 II.
 
 10
 In determining whether a suit may properly be dismissed in favor of concurrent state proceedings, the district court's discretion must be exercised under the relevant standard prescribed by the Supreme Court. Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983). In this case that standard is the exceptional-circumstances test, as elucidated by the factors discussed in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and in Moses Cone.[3]
 
 
 11
 In Colorado River, the Supreme Court identified four factors to inform the district court's discretion in determining whether there are "extraordinary circumstances" which justify staying or dismissing a federal court action in deference to state court proceedings. The court should consider whether either court has assumed jurisdiction over property, the inconvenience of the federal forum, avoidance of piecemeal litigation, and the order in which the courts obtained jurisdiction. 424 U.S. at 818, 96 S.Ct. at 1246. In Moses Cone, the court identified two additional factors--which forum's substantive law governs the merits of the litigation, 460 U.S. at 23, 103 S.Ct. at 941, and the adequacy of the state forum to protect the parties' rights. Id. at 26, 103 S.Ct. at 942.
 
 
 12
 In both Colorado River and Moses Cone, the implications of affirmative policies in federal law weighed heavily in the Supreme Court's decision whether to approve deferral to the state court litigation. In Moses H. Cone, federal substantive law in the terms of the Arbitration Act governed the issue, and the federal policy to afford speedy movement out of court and into arbitration appeared to be threatened by deferring to the state court. The court found an abuse of discretion in the granting of a stay.
 
 
 13
 In Colorado River, the Supreme Court approved dismissal of the federal action where it was "able to identify, in other Congressional legislation, a tempering of the policy of enforcing the plaintiff's choice of a federal forum in favor of a policy of avoiding duplicative and inconvenient litigation." Harris v. Pernsley, 755 F.2d 338, 345 (3d Cir.1985). The basis for federal jurisdiction in Colorado River was 28 U.S.C. Sec. 1345 giving the district courts original jurisdiction over all civil actions brought by the United States.[4] The water rights at issue there were governed in part by federal law, but the McCarran Amendment, by consenting to the joinder of the United States as a defendant in certain state suits for determination of water rights, "evidenced an affirmative policy in federal law expressly approving the litigation of federal water rights in state court." Moses H. Cone, 103 S.Ct. at 941 (citing Colorado River, 424 U.S. at 820, 96 S.Ct. at 1246).
 
 
 14
 We find that the district court correctly concluded that here, as in Colorado River, clear federal policy counsels against concurrent federal proceedings. By the enactment of 15 U.S.C. Sec. 77v, Congress created concurrent jurisdiction in federal and state courts over actions under the Securities Act of 1933, 15 U.S.C. Sec. 77a et seq. However, the statute also provides in pertinent part that "[n]o case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. Sec. 77v. Jackson's defense against the holder-in-due-course claim would involve litigation of issues of Ingersoll-Rand's good faith with respect to the securities transactions at issue in state court. The mandate of Sec. 77v cannot be effectuated if the plaintiff in a securities case brought in state court may be thwarted in his choice of forum by being forced to litigate simultaneously his claims as defenses in federal court.
 
 
 15
 Only one of the factors comprising the test for "exceptional circumstances" set forth in Colorado River and Moses Cone weighs in favor of a concurrent federal proceeding. The significance of the choice of forum clause in the Acknowledgement and Agreement, in the context of the Colorado River analysis, is that the clause evidences a waiver by Jackson of any objection to the inconvenience of the federal forum. Nevertheless, the fact that the New Jersey federal court has personal jurisdiction by consent of the plaintiff does not mean that different considerations apply to the court's decision whether to stay or dismiss the action before it.
 
 
 16
 The remaining Colorado River factors support the district court's decision to abstain. There has been no assumption of jurisdiction over property by either court. The state court assumed jurisdiction first, and counsel for Jackson represented at oral argument that the state court litigation has progressed to judgment in favor of Ingersoll-Rand and awaits only the drafting of an appropriate order. The possibility of avoiding piecemeal litigation can hardly be said to weigh in favor of Ingersoll-Rand, who cannot remove the securities action to federal court and has nevertheless made no attempt to collect on the note by filing a counterclaim in state court. The basis for federal jurisdiction here is diversity of citizenship only. Although there is some controversy as to which state law will apply, there is no question that state law and not federal will govern the merits of the collection action in either court. The state court is as well equipped as the federal to apply state law. As for the federal issues implicated by Jackson's possible defense to the collection action, Congress has affirmatively determined that they are to be determined in the forum of the securities' plaintiff's choice.
 
 
 17
 Accordingly, we will affirm the district court in its decision to defer federal proceedings to await the outcome of the action in the Texas court.
 
 III.
 
 18
 We turn now to the district court's decision to dismiss the action instead of staying it until resolution of the Texas state case.
 
 
 19
 The Supreme Court in Moses Cone reserved the question "whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that Colorado River counsels in favor of deferring to a parallel state-court suit." 460 U.S. at 28, 103 S.Ct. at 943. Ordinarily, a dismissal under Colorado River contemplates that parallel state-court litigation will completely resolve the issues between the parties and that the federal court will have nothing further to do with the case. Id., at 28, 103 S.Ct. at 943.
 
 
 20
 Here, however, the state-court litigation does not precisely correspond with the federal. Counsel for Ingersoll-Rand represented to this court during oral argument that Ingersoll-Rand did not assert its holder-in-due-course claim as a counterclaim in the Texas action which is now nearly complete at the trial stage. The Texas action is a bar to proceedings in federal court only because of the inextricable relationship of questions arising from the same transaction and concerning possible violations of the 1933 Securities Act.
 
 
 21
 In the unusual circumstances of this case, where federal policy counsels deferral to a state proceeding which is not strictly parallel, some matters arguably will remain for resolution after the state proceedings are concluded. Therefore, we think the better practice here is to stay the federal action rather than dismissing it. On remand, the district court should determine what the current status is in the Texas action to ascertain whether it is now appropriate to proceed with the federal action or to continue a stay. When a final judgment is rendered in the state proceeding and pleaded in this one, the district court will determine the effect of that judgment by applying principles of res judicata to determine what issues of fact or law remain in the case.
 
 IV.
 
 22
 In accordance with the foregoing, the order of the district court will be affirmed in part and reversed in part. The case will be remanded to the district court with the instruction to vacate its order of dismissal and stay the action.
 
 
 
 [1]
 We note Jackson's pending motion to dismiss this appeal for lack of appellate jurisdiction. This appeal is from the district court's order of August 19, 1987 dismissing Ingersoll-Rand's case against Jackson only. At the time Ingersoll-Rand filed its first notice of appeal on September 18, 1987, final judgment had not yet been entered with respect to several of the other defendants in the federal action. The appeal was filed in the absence of Rule 54(b) certification. However, at oral argument, counsel for the parties represented that nothing remained for disposition before the district court. Therefore, subsequent events have rendered the August 19th order final. Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1156 (3d Cir.1986). Except in the specific situations listed in Fed.R.App.P. 4(a)(4), a premature notice of appeal followed by a final appealable order is treated as an appeal from the final order. Knight v. Brown Transport Corp., 806 F.2d 479, 483 (3d Cir.1986). Consequently, we will deny Jackson's motion to dismiss the appeal
 Also pending before us is Jackson's motion for leave to file depositions and exhibits. Our disposition of this appeal, without the benefit of the additional exhibits, is in favor of the party offering them. Therefore, we see no reason to grant the motion. Accordingly, we will deny it.
 
 
 [2]
 The appellant also argues that the question of whether Ingersoll-Rand was a "controlling person" under Texas Blue Sky Laws and other securities laws is one of fact and not of law, and therefore cannot be considered an undetermined question of state law warranting abstention. If the "controlling person" issue is one of law, appellant urges that the law to be applied is that of New Jersey where the note is payable or of Colorado, as provided in the note before the endorsement to Ingersoll-Rand. Ingersoll-Rand further argues that the district court was incorrect in its conclusion that Ingersoll-Rand instituted this action in an attempt to circumvent 15 U.S.C. Sec. 77v, because Ingersoll-Rand did not have a cause of action on the note until Jackson's default, which did not occur until after the Texas action was filed
 We need not reach these arguments. The district court was not persuaded to abstain because of undetermined questions of state law and found it unnecessary even to decide whether Texas law would apply to the case. We recognize that Ingersoll-Rand could not have filed an earlier action. Nevertheless, Ingersoll-Rand's subjective intent is irrelevant. The district court's decision is sustainable on the ground that the effect of permitting concurrent litigation is to circumvent the non-removal provisions of Sec. 77v.
 
 
 [3]
 Three general abstention categories are described by the Supreme Court in Moses Cone as resting on "considerations of state-federal comity," or "avoidance of constitutional decisions." 460 U.S. at 14-15, 103 S.Ct. at 936. These considerations justify the refusal to exercise federal jurisdiction or delay in exercising it (1) when a federal constitutional issue might be mooted or presented in a different posture after a state court determination of state law, see, e.g., Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (2) when difficult questions of state law are presented which bear upon policy problems of substantial import, see, e.g., Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Louisiana Power & Light Co., v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); or (3) when federal jurisdiction has been invoked--in the absence of bad faith, harassment, or a patently invalid state statute--for the purpose of restraining ongoing state proceedings, see, e.g., Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 699 (1971). This case does not fall within any of these categories. No constitutional questions are presented, and decision of the state securities law questions would neither impair nor restrain the state's efforts to establish its policy or exercise its authority
 
 
 [4]
 Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress